```
             UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF LOUISIANA

MID-SOUTH CONTROL LINE, LLC             CIVIL ACTION

VERSUS                                  NO: 10-2004

LORE                                    SECTION: "J"(2)
```

### ORDER AND REASONS

Before the Court are Plaintiff's **12(b)(6) Motion to Dismiss Counterclaim (Rec. Doc. 16)**, Defendant's **Opposition (Rec. Doc. 23)**, and Plaintiff's **Reply (Rec. Doc. 26)**.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

Plaintiff Mid-South Control Line LLC ("MSCL") filed the instant suit on July 16, 2010, seeking to enforce the provisions of an employment agreement with its former employee, Defendant Richard Lore, Sr. ("Agreement"). In his Answer filed on August 18, 2010, Defendant initiated this Counterclaim against MSCL, seeking declaratory judgment that the Employment Agreement is null and void and money damages. Presently, MSCL seeks to have these claims dismissed because Lore's claims are "forever barred as a matter of law . . . pursuant to the clear and unambiguous language of the confirmation order signed by the bankruptcy judge."

In his Counterclaim, Lore alleges the following:

- On February 27, 2008, Lore entered into an employment agreement ("Agreement") with RathGibson, Inc.

  ("RathGibson").

- The Agreement has been assigned to MSCL in violation of its terms, which prohibit the assignment of the Agreement to any entity that does not acquire substantially all of the business operations of RathGibson.
- Prior to entering into the Agreement, Lore requested certain information from RathGibson. RathGibson represented that the information did not exist when, in fact, it did exist. Lore relied on RathGibson's representations regarding the lack of this information in entering into the Agreement and would not have entered into the Agreement had he been made aware of this information's existence.
- Section 7.3 of the Agreement seeks to unlawfully restrain Lore from exercising a lawful profession, trade, or business.
- Prior to terminating the Agreement, Lore openly discussed his plans to invest in Hayes Industries, Inc. ("Hayes Industries") and work in the extrusion business with Michael Schwartz and other representatives of MSCL. No one notified Lore that MSCL considered Hayes Industries a competitor of MSCL or that Lore would be in default of his obligations under the Agreement

> should he pursue his intent to invest in Hayes Industries. Michael Schwartz intentionally withheld this information from Lore in order to "obtain[] an unjust advantage and to cause loss and inconvenience to [Lore]."

- Michael Schwartz and MSCL intentionally interfered with Lore's negotiations and as are an unfair trade practice.

In support of its Motion, MSCL asserts the following facts:

- RathGibson filed for bankruptcy in July of 2009.
- RathGibson filed the Modified Third Amended Joint Chapter 11 Plan for RathGibson, Inc. et al. (the "Plan") on May 19, 2010.
- A bankruptcy court signed a confirmation order ("Confirmation Order") on May 21, 2010.
- Attached to the Confirmation Order as an exhibit was the Asset Purchase Agreement ("APA"), dated March 8, 2010, which assigned the Employment Agreement to RathGibson Acquisition Co., LLC ("RathGibson Acquisition"). RathGibson Acquisition assigned the Agreement to MSCL, a wholly-owned subsidiary, on June 11, 2010.

MSCL contends that the APA, the Plan, and the Confirmation Order all contemplated and permitted the assumption and

assignment of the Employment Agreement. MSCL argues that the bankruptcy court approved of the APA in the Confirmation Order and that Section 12.8 of the APA expressly permits RathGibson Acquisition to assign its interest in the Agreement to an affiliate without Lore's approval. Section 12.8 of the APA provides that

> No assignment of this Agreement or of any of the rights and obligations hereunder may be made by the Seller or the Purchaser (by operation of law or otherwise) without the prior written consent of the other parties hereto . . . *provided*, *however*, that the Purchaser (and in the case of clause (b) any of its Affiliates) may assign . . . this Agreement and any of the rights, obligations and/or interests hereunder, without the consent of the Sellers . . . to any Affiliate of the Purchaser.

Moreover, MSCL points out that pursuant to Section 10.3(a) of the Plan, RathGibson served an "Assumption Notice" on all parties to all contracts that would be assumed and assigned under the Plan. This Assumption Notice notified all parties of RathGibson's intent to assign the contract. Furthermore, MSCL contends that, under the Bankruptcy Code, the Assumption Notice cured any existing defaults related to the contracts by serving a "Cure Notice" on all parties to the contracts, which stated the amount owed, in RathGibson Acquisition's view, in order to cure defaults with respect to the contracts. Parties were allowed to object both to the assumption or assignment as well as the amount of cure offered. MSCL argues that Lore was served with notice but that he failed to object. MSCL further contends that, under

Section 10.3(c) of the Plan, if a party did not make a timely objection to the Cure Cost, then that party was "(a) forever barred, estopped and enjoined from disputing the Cure Cost; and (b) deemed to have consented to the assumption and assignment of such executory contract and forever barred and estopped from asserting or claiming against that any additional amounts are due or defaults exist."

Finally, MSCL argues that the Confirmation Order also forever barred Lore's claims. The Confirmation Order reads, "Each non-Debtor party to an Assigned Contract is hereby forever barred, estopped, and permanently enjoined from asserting against the Debtors, the Purchaser, or the property of any of them, any default existing as of [May 21, 2010], or any counterclaim, defense, setoff or any claim asserted or assertable against the Debtors or the Purchaser."

## DISCUSSION

As set forth by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the standard to be applied when deciding a Rule 12(b)(6) motion is not whether it is conceivable that some set of facts could be developed to support the allegations in the complaint, but rather whether the plaintiffs have stated enough facts in the complaint to allow a court to conclude that it is "plausible" that the plaintiffs are entitled to relief. The Court must accept as true all well-plead

allegations and resolve all doubts in favor of the plaintiff. Tanglewood East Homeowners v. Charles-Thomas, Inc., 849 F.2d 1568, 1572 (5th Cir. 1988).

MSCL urges that all of Lore's claims are barred by the Confirmation Order under the principles of res judicata. Pursuant to 11 U.S.C. § 1141(a), confirmation of a plan binds the interested parties, and the *res judicata* impact of plan confirmation forecloses any late attempt to assert issues related to pre-petition obligations. In re Pavlovich (Bank of Louisiana v. Pavlovich), 952 F.2d 114, 117 (5th Cir. 1992). If the plan is confirmed, all questions that could have been raised are thereby foreclosed by *res judicata*. Berryman Products, Inc. v. Nationwide Mutual Insurance Company (In re Berryman Products, Inc.), 183 B.R. 463, 467 (N.D. Tex. 1995). "It has long been recognized that a bankruptcy court's order confirming a plan of reorganization is given the same effect as a district court's judgment on the merits for claim preclusion purposes." Eubanks v. Federal Deposit Ins. Corp., 977 F.2d 166, 170 (5th Cir. 1992). Specifically, a party to a contract is bound by the cure provisions of a confirmed bankruptcy plan. See In re ALI Properties, Inc., 334 B.R. 455, 461 (Bankr. D. Kan. 2005).

However, a claim for equitable relief does not typically constitute a "claim" dischargeable in bankruptcy unless money damages are available as an alternative to the requested relief.

Ohio v. Kovacs, 469 U.S. 274, 278-83 (1985); Sheerin v. Davis (In Re Davis), 3 F.3d 113, 116 (5th Cir. 1993). The Bankruptcy Code defines a "claim" as:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. 11 U.S.C.A. § 101(5).

The issue then becomes whether the remedies sought by Lore are "claims."

Lore requests several different types of relief, many of which can be boiled down to an action for rescission. Lore claims that his consent to the Employment Agreement was vitiated because RathGibson intentionally withheld information requested by Lore and because had Lore had that information, he would not have agreed to the contract. Additionally, Lore asks for the Court to declare the contract null and void because he claims that the non-compete agreement contained therein violates public policy as articulated in La. R.S. 23:921.

State law governs whether remedies are alternative to one another. In Re Udell, 18 F.3d 403, 408 (7th Cir. 1994); see also In Re Davis, 3 F.3d at 117 (applying Texas law to determine whether claims for equitable relief could be alternatively satisfied through money damages). Both of Lore's claims, if true,

would give rise to a right of rescission of the contract under Louisiana law. La. Civ. Code Arts. 1948-50, 1953, 1955, 1966 & 1968; see also Ackel v. Ackel, 97-70 (La. App. 5 Cir. 5/28/97); 696 So. 2d 140, 143 (holding that rescission may be granted where to enforce the contract would violate state law and public policy).

Here, money damages are not a viable alternative to equitable relief and therefore, Lore's claims regarding the Agreement do not constitute "claims" within the meaning of the Bankruptcy Code. Additionally, accepting the facts in the light most favorable to Lore, Lore alleges tort claims for post-confirmation conduct. These claims, too, are not barred by the Bankruptcy Code.

Accordingly, **IT IS ORDERED** that the Plaintiff's **12(b)(6) Motion to Dismiss Counterclaim (Rec. Doc. 16)** is hereby **DENIED**.

New Orleans, Louisiana, this 4th day of January, 2011.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

8